UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARAH L.C.,

                    Plaintiff,

v.                                              **23-CV-6240-A**
                                                      **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## I.    INTRODUCTION

Plaintiff Sarah L.C. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits for a lack of disability under Title XVI of the Act. *See* ECF 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 12. Plaintiff also filed a reply. *See* ECF 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF 12) is **GRANTED**.

## II. BACKGROUND

### a. Prior History:

Plaintiff was 22 years-old when she, on April 2, 2010, originally filed applications for DIB and SSI alleging disability beginning December 13, 2009. (Tr. 192-204).[1] Her application came following her involvement, on December 13, 2009, in a motor vehicle accident in which she suffered significant injuries, including multiple orthopedic fractures in her lower extremities including the calcaneus in her right ankle as well as a traumatic brain injury ("TBI"). (Tr. 1415-1416, 1446). On May 4, 2010, Plaintiff, based upon a right foot impairment, was determined to be disabled pursuant to Title II of the Act. (Tr. 1093-1095).

On September 28, 2017, Plaintiff was determined no longer to be disabled. (Tr. 104-108, 109-112). On September 6, 2019, a hearing was held at which Plaintiff testified. (Tr. 41-73). Following such hearing, ALJ Gregory M. Hamel, on October 21, 2019, issued a decision denying Plaintiff benefits. (Tr. 16-33). On October 14, 2020, the Appeals Council ("AC") denied review. (Tr. 1-6). Thereafter Plaintiff filed her initial appeal to this Court.

Pursuant to a stipulation between the parties, this Court's Chief Judge, Hon. Elizabeth A. Wolford, on March 15, 2022, reversed the Commissioner's findings and remanded Plaintiff's claim back to the Commissioner. (Tr. 1149-51). On November

---

[1] References preceded by "Tr." are to Bates-stamped pages in a consecutively paginated, 2386 page, two-volume ECF filing. See, ECF 6 and 6-1. Pages 1-1190 are contained in ECF 6, while pages 1191-2386, are contained in ECF 6-1.

17, 2022, ALJ John P. Ramos held a hearing at which Plaintiff, once again, appeared and testified. (Tr. 1062-92). On January 10, 2023, the ALJ issued a written decision which determined that Plaintiff's disability under sections 216(i), 223(f), and 1614(a)(3) of the Social Security Act ended on September 28, 2017, and that Plaintiff has not become disabled again since that date. (Tr. 1034-61). This action followed.

### b.  The ALJ's Decision

The ALJ (Tr. 1034-1061) analyzed Plaintiff's claim for benefits under the sequential process—*see*, Section III(b), "*The Continuing Disability Review Standard*," *infra*—and made the following findings in his January 13, 2023, decision:

The ALJ first found that Plaintiff's most recent medical decision finding disability was a determination dated May 4, 2010. (Tr. 1039).[2]  In that regard, the ALJ observed that Plaintiff's disability was based on a right foot impairment found to medically equal section 1.02(A). (Tr. 1040). Based upon the foregoing, the ALJ determined, under Step 1, that between May 4, 2010, and January 13, 2023, Plaintiff had not engaged in substantial gainful activity.  (Tr. 1040).

Under Step 2, the ALJ determined that Plaintiff had the following severe impairments at the time of the CPD: fractures of both ankles and a TBI. (Tr. 1040). The ALJ further found that since September 28, 2017, Plaintiff has had (and

---

[2] The ALJ referred the May 10, 2010, decision as the "Comparison Point Decision" or ("CPD").

currently has) the following medically determinable impairments: TBI, residuals of right ankle fracture, chronic pain syndrome, obesity, adjustment disorder with depressed mood and mixed anxiety, and cannabis use disorder. (Tr. 1040).

At Step 3, the ALJ concluded that since September 28, 2017, Plaintiff's impairment or combination of impairments did not meet or equal one of the impairments listed in 20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926. (Tr. 1040-1042).

At step 4, the ALJ determined that Plaintiff's medical improvement is related to her ability to work because, by September 28, 2017, Plaintiff's impairments no longer met or medically equaled the same listing determined at the time of the CPD. (Tr. 1043).

While the ALJ found, at Step 6, that Plaintiff, since September 28, 2017, has continued to have a severe impairment or combination of impairments (Tr. 1043), and at Step 7, that she had no relevant past work experience (Tr. 1050), the ALJ nevertheless found, at Step 8, the following:

> Since September 28, 2017, based on the current impairments, [Plaintiff] has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb stairs, but cannot climb ladders, ropes, and scaffolds, and she can occasionally balance, stoop, kneel, crouch and crawl. [Plaintiff] retains the ability to understand and follow simple instructions and directions, to perform simple one or two tasks with supervision and independently, and to maintain attention/concentration for simple one or two step tasks and regularly attend to a routine and maintain a schedule.  [Plaintiff] can frequently interact with coworkers and supervisors throughout the workday to the extent necessary to carry out simple one or two step tasks and she can have frequent brief

interaction with the public. [Plaintiff] can make decisions directly related to the performance of simple work and handle usual workplace changes and interactions associated with simple work. She should work in a position where she is not responsible for the work of or required to supervise others, in a position with little change in daily work processes or routine. (Tr. 1043-1044).

Finally, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 1050-1051). On that basis, the ALJ determined that Plaintiff's disability ended on September 28, 2017, and that Plaintiff had not become disabled again since that date (Tr. 1051).

### c. The Parties' Contentions:

In seeking this Court's review of the ALJ's determination, Plaintiff argues the ALJ erred: (1) in performing a collective weighing of the treating opinions provided by Dr. Davila-Martinez (ECF 7-1, pp. 15-20); and (2) in failing to consider the various moderate limitations to which Dr. Nunez opined. (ECF 7-1, pp. 20-22). Defendant responds that the ALJ committed no error and that, therefore, the ALJ's decision should be affirmed. (ECF 12-1).

## III. LEGAL STANDARD

### a. District Court Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697

5

F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether Plaintiff is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the Plaintiff's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

### b. The Continuing Disability Review Standard

Where, as here, a person as Plaintiff has been determined to be disabled, the Social Security Administration must conduct periodic continuing disability reviews to

ensure that individuals are entitled to the benefits they are receiving. *See* 42 U.S.C. § 421(i); 20 C.F.R. §§ 404.1589, 416.989. "Benefits may be terminated if there is substantial evidence that the impairment has improved to such an extent that [the person previously determined to be disabled] is now able to work." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see*, *Tracy G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-198-DB, 2023 WL 2601946, at *2 (W.D.N.Y. Mar. 22, 2023) ("[t]ermination of benefits may occur when there is substantial evidence to show that a 'medical improvement' restores the recipient's ability to work."). "Medical improvement is defined as 'any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he or she was] disabled or continued to be disabled." *Id*. (citing *inter alia* 20 C.F.R. § 404.1594(b)(1); 416.994(b)(1)(f)); *see also, Douglass v. Astrue*, 496 Fed.App'x. 154, 155 (2d Cir. 2012) (same).

There is an eight-step sequential process which must be followed determine whether an individual continues to qualify for DIB claims. *See*, 20 C.F.R. 404.1594(f)(1)-(8).  In assessing, SSI claims, ALJs are required to follow a similar seven-step sequential analysis. *See*, 20 CFR 416.994(b)(5)(i)-(vii).[3]

---

[3] The medical improvement standard for SSI claims does not include a determination of whether the claimant is engaged in substantial gainful activity. *Denise C. v. Kijakazi*, No. 3:23-CV-052 (ATB), 2023 WL 6065949, at *2 (N.D.N.Y. Sept. 18, 2023). For ease of reference, the Court will hereinafter refer to each step as they pertain to DIB claims. The analogous steps for SSI claims, are, of course will be one-step less.

At Step 1, the ALJ must first determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. 404.1594(f)(1). This Step is inapplicable in assessing SSI claims.

At Step 2 for DIB claims (and Step 1 for SSI claims), the ALJ is required to determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 416.920(d), 416.925 and 416.926). If so, the claimant's disability continues. *See*, 20 CFR 404.1594(f)(2) and 416.994(b)(5)(i).

At Step 3, the ALJ must determine whether there has been any medical improvement, as that term is defined above. *See*, 20 CFR 404.1594(f)(3) and 416.994(b)(5)(ii). If medical improvement has occurred, the analysis proceeds to Step 4. If not, the analysis proceeds to Step 5.

At Step 4, the ALJ must determine whether medical improvement is related to the claimant's RFC, based on the impairment that was present at the time of the most recent favorable medical determination. *See*, 20 CFR 404.1594(f)(4) and 416.994(b)(5)(iii). If the ALJ finds that the medical improvement was related to the claimant's RFC, the ALJ skips Step 5 and proceeds to Step 6.[4]

At Step 6, the ALJ must determine whether all the claimant's current impairments in combination are severe. *See*, 20 CFR 404.1594(f)(6) and

---

[4] Step 5 (Step 4 for SSI claims), which considers whether any specified exception applies, only comes into play if the ALJ finds that there was no medical improvement, or the medical improvement was unrelated to the claimant's ability to work. *See* 20 C.F.R. 404.1594(f)(5) and 416.994(b)(5)(iv).

416.994(b)(5)(v). §§. If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At Step 7, the ALJ must assess the claimant's RFC based on the current impairments and determine if he can perform past relevant work.  *See*, 20 CFR 404.1594(f)(7) and 416.994(b)(5)(vi). If the person has the capacity to perform past relevant work, the person's disability has ended.

Finally, at Step 8, the ALJ must decide if the person cannot perform past relevant work, whether such person can do other work given their RFC. *See*, 20 C.F.R. 404.1594(f)(8) and 416.994(b)(5)(vii)  If the person can perform work, the disability has ended, and in order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

IV. ANALYSIS

    A. The ALJ Did Not Err in Assessing the Opinions Offered by Dr. Davila-Martinez

Plaintiff initially claims that the ALJ, despite performing the appropriate sequential analysis of Plaintiff's claim, erred in a collective weighing of the treatment opinions offered by her treating physician Dr. Mariel Davila-Martinez. (ECF 7-1, pp. 15-20). In remanding the case to the ALJ, the Appeals Council directed that the

procedural history of the case required that the ALJ, in considering opinion evidence, apply the prior rules set forth in 20 CFR 404.1527 and 416.927 (prior rules). (Tr. 1155). While the ALJ did recognize Dr. Davila-Martinez as Plaintiff's treating specialist, the ALJ also noted that the treating specialist opinion was based principally on testing which was dated (having been conducted back in 2012) and on Plaintiff's own subjective complaints. (Tr. 1048). Noting that the limitations suggested by Dr. Davila-Martinez were inconsistent with not only more recent psychological and intelligence testing conducted on Plaintiff but also with both the treatment that Plaintiff was receiving as well as the Plaintiff's own more current description of her activities of daily living (Tr. 1048-1049), this Court finds no error in the way the ALJ addressed Dr. Davila-Martinez's opinion.

Generally, the ALJ has "an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). On review, this Court will "conduct a plenary review of the administrative record to determine if ... the correct legal standards have been applied." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Here, notwithstanding Plaintiff's assertion that the ALJ failed appropriately to apply the treating physician rule, this Court, upon a thorough review of the record before it, determines that the ALJ applied the correct legal standards, and that the substance of the treating physician rule was not violated by the ALJ's ruling. *See, Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (per curiam).

Indeed, the opinion of the treating physician need not be afforded controlling weight where, as here, the treating physician issued opinions that are not consistent

10

with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Davila-Martinez to the ALJ were not particularly informative and were not consistent with the actual treatment that Plaintiff was receiving, with the opinions of other medical experts, or with the Plaintiff's own reported daily activities. Thus, the ALJ did not err in failing to give Dr. Davila-Martinez's opinion controlling weight.

An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id*. The regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Id*.; accord 20 C.F.R. § 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503-504 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

Applying these regulations and principles, this Court concludes that the ALJ considered the treating physician's opinion and explained the consistency of Dr. Davila-Martinez's opinion "with the record as a whole." 20 C.F.R. § 404.1527(d)(4). The ALJ noted that many findings in Dr. Davila-Martinez's opinion were inconsistent with other evidence in the record. (Tr. 1048-1050).

As the ALJ observed, Plaintiff, following her 2009 motor vehicle accident, began receiving disability benefits based on physical limitations after it was determined in May 2010 that she had a musculoskeletal impairment equal listing 1.02A. At that time, Plaintiff's had two broken ankles, was utilizing a walker to ambulate, and was going to require additional surgical intervention (Tr. 1093, 1447-1448). However, the Plaintiff's musculoskeletal condition medically improved, and since September 28, 2017, Plaintiff has been able to ambulate effectively without an assistive device. (Tr. 323-324). By 2011, Plaintiff had begun working part time and subsequently worked as a part-time medical driver (15 to 25 hours per week) in 2021. (Tr. 1040, 2088). The ALJ determined that by September 28, 2017, her residual functional capacity allowed her to perform a range of sedentary work with additional postural and non-exertional limitations. (Tr. 1043-1044).

Although not the basis for her receiving disability benefits in 2010, Plaintiff also sustained a TBI in her 2009 automobile accident. Plaintiff underwent a psychological evaluation by Dr. Lori Chang on August 21, 2017, in connection with her disability application. (Tr. 329). The record notes that Plaintiff arrived on time, was pleasant and forthright, but struggled with cognitive compromise. (Tr. 329). The

12

report notes that she had no history of inpatient psychiatric hospitalization or outpatient treatment. (Tr. 331). Upon examination, she was alert and fully oriented. (Tr. 333). She was able to complete single and multiple step directions without significant difficulty. *Id.* Immediate recall of three common objects presented in verbal format was 3/3 with 1/3 recalled following a short delay. *Id.* She was able to complete serial 7's without computation errors and was able to correctly spell the word "World" forwards but not backwards. *Id.* Speech was clear and articulate with no evidence of word finding or pronunciation problems. *Id.* Both expressive and receptive language abilities were intact. *Id.* Thought processes were clear and logical with no evidence of hallucinations, delusional thought processes, loosening of associations, flight of ideas, tangential thinking, thought broadcasting, or thinking that was obsessive or perseverative in nature. *Id.* Plaintiff's intellectual abilities appeared to fall in the average range of functioning and are consistent with educational background. *Id.* Her recent and remote memory were mildly compromised as evidenced by mild retrieval problems at times. *Id.* Attention and concentration were within normal limits, and her mood was calm with affect congruent to mood. *Id.* The report assessed only "mild to moderate cognitive problems." (Tr. 334). The ALJ noted that this evaluation indicated that Plaintiff "retained the ability to, at minimum, perform simple unskilled work." (Tr. 1046). The ALJ afforded this opinion weight as consistent with the underlying examination findings and rest of the medical record. (Tr. 1049).

Thereafter, in February of 2018, Plaintiff was evaluated by Dr. Davila-Martinez for further evaluation of her TBI sequelae.  (Tr. 336). In assessing Plaintiff, Dr. Davila-Martinez examined brain imaging of Plaintiff taken at the time of her 2009 accident and neuropsychological testing from 2012. *Id*.  In that exam, Dr. Davila-Martinez noted that Plaintiff was "awake, alert, attentive, oriented to time, place, person. Recent and remote memory intact to conversation with no evidence of language dysfunction. Satisfactory fund of knowledge. Normal attention span." (Tr. 337). In both the February 2018 exam and subsequent exams in October 2018, August of 2019, and July of 2020, Dr. Davila-Martinez noted that Plaintiff "would have difficulty maintaining a fast pace, multitasking, common sense/higher level of reasoning, and new learning/retention of material." (Tr. 1014, 988, 2009).  She repeatedly opined that Plaintiff would be unable to work because of the long-term deficits/effects of her TBI.  (Tr. 335, 357, 988, 989-990, 2028, 2009, 1996).

Subsequently, on October 21, 2022, Plaintiff underwent another psychological consultative examination (Tr. 2034-2038) as well as an intelligence evaluation (Tr. 2039-2043) by Dr. Slowick. On that examination, Plaintiff was cooperative, her social skills were adequate, and she appeared well groomed; her posture and motor behavior were normal, her eye contact was appropriate, her speech intelligibility was fluent, her quality of voice clear, and her expressive and receptive language skills were adequate. (Tr. 2035). Plaintiff reported that her 4-year-old and 6-year-year-old lived with her.  (Tr. 2039).  Her thought processes were coherent, and goal directed with no evidence of hallucinations, delusions, or paranoia her affect was full range

and appropriate to speech and thought content, and her mood was euthymic. (Tr. 2035). Her sensorium was clear, and she was oriented to person, time, and place. (Tr. 2036). While Plaintiff's attention and concentration were mildly impaired, her recent memory skills were intact, but her remote memory skills were markedly impaired. (Tr. 2036). IQ testing showed a full-scale IQ of 80. (Tr. 2041). Dr. Slowick diagnosed cannabis use disorder and history of polysubstance abuse. (Tr. 2037). She assessed that Plaintiff had mild limitations in her ability to understand, remember, or apply simple directions and instructions; use reasoning and judgment to make work-related decisions; sustain concentration; sustain an ordinary routine, maintain personal hygiene, and be aware of normal hazards. (Tr. 2037). Plaintiff was moderately limited in her ability to remember or apply complex directions and instructions. (Tr. 2037). She was not limited in her ability to interact with supervisors, coworkers, and the public. (Tr. 2037).  Dr. Slowick concluded that Plaintiff's evaluations were consistent with substance abuse and cognitive problems, but they did not appear to be significant enough to interfere with her ability to function daily. (Tr. 2037). The ALJ afforded this opinion great weight as it was "supported by examination and objective testing and is consistent with the claimant's treatment and activities at the time". (Tr. 1049-1050).

In addition to the reports from Dr. Chang and Dr. Slowick, the record also contains medical opinions from two state agency doctors—Dr. Catherine Nunez and Dr. Thomas Harding.  Dr. Nunez noted that Plaintiff lacked mental health treatment, examinations reflected normal findings, and that she engaged in a wide range of

daily functioning. (Tr. 79). Dr. Nunez assessed no more than moderate mental limitations and opined that Plaintiff could complete simple routine tasks in a work setting. *Id.* She concluded that Plaintiff's mental impairment did not appear to be of disabling proportions, and she is capable of performing simple, unskilled repetitive assignments and tasks. (Tr. 82). Dr. Thomas Harding affirmed this opinion on April 19, 2018. (Tr. 355). The ALJ determined that these opinions warranted great weight as to the conclusion that Plaintiff could perform simple routine tasks, consistent with simple unskilled work (and consistent with her return to work as a medical driver). (Tr. 1048). The ALJ noted that further restrictions were added to the RFC to accommodate Plaintiff's allegations, but her mental limitations were still no more than moderate. (Tr. 1048).

The ALJ further noted that Plaintiff's treatment history did not support her claims. The ALJ noted that she sought minimal treatment for her conditions and continued to smoke marijuana and decline psychotropic medications. (Tr. 1047, *see* Tr. 966 ["she is not taking any medication… She reports that she managers her symptoms well when she can use cannabis."], Tr. 973 ["She hopes to get a marijuana card. She doesn't to take any other medications..."], Tr. 964 ["I don't drink and I don't do drugs; weed is just a plant to me.' [Plaintiff] made a distinction between cannabis and other drugs. She stated she 'hates pills' and prescribed medication."]). The ALJ also noted that she engaged in a wide range of activities of daily living including cooking, dishes, laundry, sweeping, and vacuuming; she reported walking, reading, attending church, and using public transportation. (Tr.

16

1047). She reported in June 2019, that she had completed some college in paralegal studies, and wanted to return to school for accounting, as she has always been good at math. (Tr. 967). In July 2021, Plaintiff report that she had bought a car and was working part-time as a medical driver. (Tr. 2088). This involved working 15 to 25 hours per week. (Tr. 2343). The ALJ properly noted that these activities suggested a greater functional ability than alleged. (Tr. 1048).  They also contradict Dr. Davila-Martinez's opinion that Plaintiff's lacked the ability to work.

In view of the foregoing, this Court concludes that Dr. Davila-Martinez's opinion is not consistent with other substantial evidence in the record—including the opinions of other medical experts, Plaintiff's treatment records, and Plaintiff's own behavior—and thus, the ALJ did not err in failing to give Dr. Davila-Martinez's opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d at 32; *see*, 20 C.F.R. § 404.1527(d)(4).

### B. The ALJ Did Not Err in the Manner in Which He Considered the Limitations to Which Dr. Nunez Opined

Plaintiff next asserts that the ALJ erred in formulating the RFC that he did as such RFC did not comport with various limitations imposed by Dr. Nunez. (ECF 7-1, pp. 20-22).

In this Court's view, the ALJ properly relied on multiple evidentiary sources to arrive at the RFC finding that he did, and he was not required to base the RFC directly on any one medical opinion.  *Nida A. v. Comm'r of Soc. Sec.*, No. 1:21-CV-569-DB, 2023 WL 6880467, at *4 (W.D.N.Y. Oct. 18, 2023).  The Second Circuit has

17

accordingly rejected the notion that an ALJ impermissibly relies upon his "lay opinion" when he derives specific RFC limitations without the benefit of a medical opinion. *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) ("An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear. The ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination."). As the Second Circuit has observed:

> The ALJ is permitted to discount the opinion of a … physician if it is inconsistent with other substantial evidence. And the ALJ bears "the final responsibility" for making RFC determinations. It follows from these basic principles that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence. In so holding, we here reiterate a point that this Court has previously made summarily… an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."

*Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citations omitted). Here, this Court finds that substantial evidence supports the determination including the RFC limitations determined by the ALJ.

V.  **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF 7) is **DENIED** and the Commissioner's motion for judgment on the pleadings

(ECF 12) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

    **IT IS SO ORDERED**.

                                      *__s/Richard J. Arcara_____*
                                      HONORABLE RICHARD J. ARCARA
                                      UNITED STATES DISTRICT COURT

Dated:  May 7, 2024
        Buffalo, New York